UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAIDOU JALLOW,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, et al.,<br>Respondents. | Case No. 2:26-cv-03157-TMC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION AND BACKGROUND

Petitioner Saidou Jallow is a 57-year-old Sierra Leonean national who entered the United States in 2001 after fleeing political violence in Sierra Leone. Dkt. 1 ¶¶ 1–2. In 2009, Mr. Jallow was granted political asylum by an immigration judge ("IJ"), but that decision was reversed by the Board of Immigration Appeals ("BIA"), which ordered Jallow's removal from the United States. *Id.* ¶ 3. In 2014, Jallow was detained for one day and then released with an Order of Supervision. *Id.*

In December 2025, without notice, U.S. Immigration and Customs Enforcement ("ICE") re-detained Jallow and transferred him to an immigration detention center in Texas. *Id.* ¶ 4. Approximately four months later, a federal court in Texas ruled that Jallow's detention was unlawful and ordered him released from custody. *Id.* Upon his release, ICE placed a GPS ankle

monitor on Jallow and issued a new Order of Supervision that imposed more stringent reporting requirements, including multiple monthly check-ins and home visits. *Id.* ¶¶ 5–6.

On September 3, 2026, Jallow filed a petition for writ of habeas corpus challenging the GPS monitoring and increased reporting requirements. Dkt. 1. On September 18, 2026, Respondents filed a return, agreeing that GPS monitoring can constitute "custody" for purpose of habeas relief, but arguing that imposition of GPS monitoring alongside more intensive reporting requirements was not unlawful. Dkt. 5 at 3.

While this petition was pending, Respondents notified the Court that ICE obtained "a copy of valid travel documents from the Republic of Sierra Leone authorizing" Jallow's "removal to Sierra Leone" and that removal is "[i]mminent." Dkt. 10 at 1; Dkt. 12 at 1.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

### A. Jallow is "in custody" for purposes of habeas jurisdiction.

Jallow argues that ICE's GPS monitoring and increased reporting requirements constitute "custody" for purposes of 28 U.S.C. § 2241. Dkt. 1 at 19–28. The government does not contest this. Dkt. 5 at 2.

The Supreme Court is clear that courts should "very liberally construe[]" "custody" for purposes of habeas jurisdiction. *Maleng v. Cook*, 490 U.S. 488, 492 (1989). Physical detention is not required. *Id.* at 491. Rather, the relevant inquiry is whether a person is subject to "restraints

not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963). Here, the Court finds that Jallow is subject to such restraints.

The Ninth Circuit has held, in the criminal context, that certain conditions of supervised release—including sex offender registration, fees, and ankle monitoring—do not amount to "custody" for purposes of habeas jurisdiction. *See Munoz v. Smith*, 17 F.4th 1237 (9th Cir. 2021). But as other district courts in this Circuit have recognized, the supervised release context is distinct from immigration supervision. *See Harrington v. Albarran*, No. 26-CV-01889-JST, 2026 WL 800113, at *5 (N.D. Cal. Mar. 23, 2026); *cf. Diallo v. Scott*, No. 2:26-CV-00975-GJL, 2026 WL 1843102, at *3 (W.D. Wash. June 26, 2026) (holding that GPS ankle monitoring amounts to custody). Indeed, in analyzing the conditions before it, the *Munoz* court noted that conditions imposed following a criminal conviction "could be regarded as collateral consequences of conviction," analogous to the loss of the right to vote, rather than "custodial requirements." 17 F.4th at 1243. As *Harrington* recognized, that rationale does not apply where, as here, the challenged conditions were "unrelated to any conviction." *Harrington v. Albarran*, 2026 WL 800113, at *5.

Moreover, *Munoz* distinguished the conditions before it from more substantial reporting and travel restrictions, such as requirements to "register in-person with the State Police every three months." 17 F.4th at 1243. Jallow faces comparable affirmative restrictions on his liberty: he must appear at regular supervision check-ins multiple times per month alongside continuous GPS monitoring. Dkt. 1 ¶ 6. These are not collateral consequences of a conviction; they are ongoing, affirmative restraints on his liberty "not shared by the public generally." *Jones*, 371 U.S. at 240. Accordingly, Jallow is "in custody" under § 2241.

**B. The imposition of GPS monitoring under 8 C.F.R. § 241.5 does not violate procedural due process as applied to Jallow.**

Jallow principally argues that ICE violated his procedural due process rights by imposing GPS ankle monitoring and heightened reporting requirements after his release from re-detention. When Jallow was released, the court order granting his habeas petition stated that his "release is subject to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5." *See Jallow v. Warden, Rio Grande Det. Ctr.*, No. 5:26-cv-00126, Dkt. 27 at 7 (S.D. Tex. Apr. 16, 2026). Section 1231(a)(3) states that when a noncitizen "is not removed within the removal period," he "shall be subject to supervision under regulations prescribed by the Attorney General," including "provisions requiring" the noncitizen "to appear before an immigration officer periodically for identification" and "to obey reasonable written restrictions on" the noncitizen's "conduct or activities." 8 U.S.C. § 1231(a)(3)(A), (D). The regulation at 8 C.F.R. § 241.5 delegates to certain officials the authority to issue orders of supervision, and states that such orders "shall specify conditions of supervision including, but not limited to," requirements that the noncitizen "report to a specified officer periodically" and "obtain advance approval of travel beyond previously specified times and distances." 8 C.F.R. § 241.5(a)(1), (4).

Jallow does not provide any persuasive authority that imposing GPS monitoring or frequent reporting requirements fall outside of this statutory or regulatory authority. Instead, by arguing that the requirements violate procedural due process, he essentially argues that these regulations violate the due process clause as applied to him. He analyzes these restrictions under the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Courts throughout the Ninth Circuit have applied *Mathews* and general principles of procedural due process to limit the imposition of custodial conditions on noncitizens previously released from detention. *See, e.g.*, *Diallo*, 2026 WL 1843102, at *4–*7.

Because habeas is an equitable remedy and Jallow seeks forward-looking relief, the Court must consider when evaluating Jallow's due process claim the supplemental evidence submitted by Respondents. Although habeas jurisdiction is determined at the time the petition is filed, *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007), courts considering claims for prospective relief must consider subsequent developments bearing on the availability and appropriateness of that relief. *See Saechao v. Scott*, No. 2:26-cv-00548-TMC, at *6–8 (W.D. Wash. Mar. 5, 2026).

Here, developments since Jallow filed his petition materially alter the circumstances before the Court. On October 16, 2026, Respondents notified the Court that they had received travel documents for Jallow from the Republic of Sierra Leone, authorizing his removal there. Dkt. 10 at 1. And on November 5, 2026, Respondents notified the Court that removal was "[i]mminent." Dkt. 12 at 1. The receipt of those documents and notice provide concrete evidence that Jallow's removal is now reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *Saechao*, No. 2:26-cv-00548-TMC, at *6–8 (finding that newly obtained travel documents and arrangements for removal established that removal was reasonably foreseeable and weighed against requiring pre-deprivation notice and a hearing before re-detention).

In light of these changed circumstances, the *Mathews* analysis favors Respondents. While Jallow has a significant private interest in avoiding GPS monitoring and heightened reporting requirements that meaningfully restrict his liberty, privacy, and freedom of movement, that interest is reduced when he is subject to a final, executable order of removal. *See Mathews*, 424 U.S. at 335; *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). The second factor favors Jallow because ICE imposed these restraints without providing him an opportunity to challenge them, creating a risk of erroneous deprivation. *Id.*; *cf. Rodriguez Diaz*, 53 F.4th at 1209 (erroneous deprivation is less likely when agency procedures provide for review). The third

factor, however, favors Respondents, who have a substantial interest in ensuring Jallow's availability for removal now that removal is reasonably foreseeable. *Rodriguez Diaz*, 53 F.4th at 1208 ("The risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent."). On balance, the Government's interest in effectuating Jallow's removal outweighs the need for additional procedural protections, and the imposition of Jallow's conditions of supervision pursuant to the relevant statute and regulation do not violate the due process clause.

**C. Jallow's remaining claims do not warrant a different result.**

Jallow also argues that ICE's imposition and continued enforcement of the challenged conditions violate substantive due process, the Administrative Procedure Act ("APA"), and the *Accardi* doctrine. Dkt. 1 ¶¶ 55–88. None of these theories warrant additional relief.

First, Jallow's substantive due process claim fails. The Supreme Court has recognized two legitimate purposes for civil detention—preventing danger to the community and flight. *See Zadvydas*, 533 U.S. at 690–92; *see also Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (explaining that immigration detention may "violate . . . substantive due process [when it] fail[s] to serve any valid purpose"). More generally, substantive due process "prohibits civil detention that is punitive in its purpose or effect." *Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1181 (E.D. Cal. 2025) (citing *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)); *Andino v. Chestnut*, No. 1:26-CV-04130 (VC), 2026 WL 3090348, at *3 (E.D. Cal. Oct. 15, 2026). However, the imposition of electronic monitoring and heightened reporting requirements for a noncitizen subject to a final order of removal does not, without more, establish a substantive due process violation. *Cf. Nguyen v. B.I. Inc.*, 435 F. Supp. 2d 1109, 1115 (D. Or. 2006) (rejecting a substantive due process challenge to intensive supervision, including electronic monitoring, of noncitizens subject to final orders of removal).

Second, the APA provides a cause of action only where there is no other adequate remedy in court. 5 U.S.C. § 704. Here, Jallow's challenge to the legality of his continued supervision is properly before the Court under 28 U.S.C. § 2241, which provides a vehicle to challenge the restraints imposed. *See Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *Siackasorn v. Mullin*, No. 2:26-cv-01485-GJL, slip op. at 10 (W.D. Wash. June 17, 2026).

Third, the *Accardi* doctrine requires agencies to adhere to their own governing rules and procedures, particularly where the regulation or procedures are intended to protect the interests of a party before the agency. *See Sameena v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998); *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004). The Court concludes, however, that Jallow has not met his burden to show that the cited portions of the ATD Handbook, which require ICE to conduct an individualized assessment before imposing monitoring conditions, were not followed. *See* Dkt. 1 ¶¶ 84–88; Dkt. 5 at 14.

## IV. CONCLUSION

For the foregoing reasons, the petition for habeas corpus is DENIED.

Dated this 5th day of November, 2026.

Tiffany M. Cartwright
United States District Judge